# CASE NO.: 23-60321

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### UNITED STATES OF AMERICA,
**Plaintiff – Appellee,**

### V.

### JAMARR SMITH, THOMAS AYODELE, GILBERT MCTHUNEL, II
**Defendants – Appellants**

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

_____

## REPLY BRIEF OF APPELLANTS
## CRIMINAL APPEAL

_____

**Goodloe T. Lewis**
**CJA-FPD for Smith**
**1305 Madison Avenue**
**Oxford, Mississippi 38655**
**(662) 234-4000 (telephone)**
**(662) 234-2000 (facsimile)**
**glewis@hickmanlaw.com**
**Mississippi Bar No.: 9889**

**Paul Chiniche**
**CJA-FPD for McThunel**
**265 N. Lamar Blvd., Ste. W**
**Oxford, Mississippi 38655**
**(662) 234-4319 (telephone)**
**(662) 259-8451 (facsimile)**
**pc@chinichelawfirm.com**
**Mississippi Bar No.: 101582**

**William F. Travis**
**CJA-FPD for Ayodele**
**8619 HWY 51 N.**
**Southaven, MS 38671**
**(662) 393-9295 (telephone)**
**bill@southavenlaw.com**
**Mississippi Bar No.: 8267**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................i

TABLE OF AUTHORITIES .................................................. iii

ARGUMENT AND AUTHORITIES .......................................1

I.   Issue I: The geofence warrant was unconstitutional
     and the good-faith exception does not apply ...................................1

     A. Smith, McThunel and Ayodele have a Fourth Amendment
        interest in their location history, as Google recently demonstrated ...............1

     B. The government makes a remarkable concession: The warrant
        did not need to have the three-step process, nor did the government
        have to obtain further legal process ..................................4

     C. The government's reliance on *ex parte* magistrate judge opinions
        is misplaced ..........................................................6

     D. *United States v. James* does not help the government...................................7

     E. The government's contention that Ybarra applies only to searches
        of persons and not things is incorrect………………………………8

II.  Issue II: Moody's Testimony was Inadmissible Pursuant to *Daubert*...............9

     A. There is no requirement that *Daubert* motions be filed
        before trial...........................................................9

     B. Google Location History is *not* "nothing more than historical GPS
        location data" .......................................................10

     C. The government cannot overcome Moody's shortcomings by
        asking the court to punt scientific reliability determinations to
        the jury ..............................................................10

     D. The government cannot rely on Spencer McInvaille to resurrect

Moody's testimony ........................................................................... 13

CONCLUSION ...................................................................................... 13

CERTIFICATE OF SERVICE ................................................................ 14

CERTIFICATE OF COMPLIANCE ....................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Pages**

*Carpenter v. United States*, 138 S.Ct 2206 (2018)................................................3, 8

*Diabetes Ctrs. Of Am. L.L.C. v. Healthpia Am. Inc.*,
2008 WL 375505 (S.D. Tex. Feb. 11, 2008)………...............................................12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)…...9, 10, 11

*Fair v. Allen*, 669 F.3d 601 (5th Cir. 2012)..............................................................11

*Franks v. Delaware*, 438 U.S. 154 (1978)………....................................................6

*Flores v. FS Blinds, L.L.C.*, 73 F. 4th 356 (5th Cir. 2023)…………………………..7

*Jacked Up, L.L.C. v. Sara Lee Corp*, 807 F. Spp'x 344 (5th Cir. 2020).................12

*Matter of Search of Information Stored at Premises Controlled
by Google*, 2020 WL 5491763 (N.D. Ill. July 8, 2020)…………………….…..6

*Matter of Search of Information Stored at Premises Controlled
by Google*, 481 F. Supp. 3d 730 (E.D. Ill. 2020)........................................................6

*Matter of Search Warrant Application for Geofence Location Data
Stored at Google Concerning an Arson Investigation*, 497 F. Supp. 3d 345
(N.D. Ill. 2020)………………………………………….…………………………6

*Matter of Search of Info. that is Stored at Premises Controlled
by Google*, LLC, 542 F. Supp. 3d 1153 (D. Kan. 2021)………………………….7

*Matter of Search of Information Stored at Premises Controlled
by Google*, 579 F. Supp. 3d 62 (D.D.C. 2021)........................................................7

*Nairne v. Ardoin,* 2023 WL 7323204 (M.D. La. Nov. 7, 2023) ............................11

*Riley v. California*, 573 U.S. 373 (2014)..................................................................2

*Trulock v. Freeh*, 275 F. 3d 391 (4th Cir. 2001)…………………………………3

*United States v. Chatrie,* 590 F. Supp. 3d 901 (E.D. Va. 2022).......................3, 6, 8

*United States v. James,* 2019 WL 325231 (D. Minn., Jan. 25, 2019)......................7

*United States v. Montemayor*, 55 F.4[th] 1003 (5th Cir. 2022)....................................8

*United States v. Pierre*, 2011 WL 2199375 (E.D. La. June 6, 2011)......................9

*United States v. Rhine*, 652 F. Supp. 3d 38 (D.D.C. 2023)....................................10

*United States v. Smith*, 2023 WL 1930747 (N.D. Miss. Feb. 10, 2023)..................4

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987).......................................11

*Ybarra v. Illinois*, 444 U.S. 85 (1979).........................................................8

*ZF Meritor, LLC v. Eaton Corp.*, 696 F. 3d 254 (3d Cir. 2012)………..………..12

## **Statutes**

18 U.S.C. §2702...................................................................................3

## **Rules**

Fed. R. Evid. 702....................................................................................11

## **Other Authorities**

Farivar, Cyrus & Thomas Brewster, Google Just Killed Warrants
That Give Police Access to Location Data, Forbes (Dec. 14, 2023)………..……..2

McGriff, Marlow, Updates to Location History (Dec. 12, 2023)
available at: https://blog.google/products/maps/updates-to-
location-history-and-new-controls-coming-soon-to-maps/………………...………1

## ARGUMENT and AUTHORITIES

**I.     Issue I: The geofence warrant was unconstitutional and the good-faith exception does not apply.**

As the Court is aware, the district court did not reach the constitutionality of the warrant because it found that the good faith exception applied. This Court should find the warrant unconstitutional and that the good faith exception does not apply. Review of the government's brief on the good faith issue does not reveal any issues which were not adequately addressed in the appellants' initial brief. Therefore, the appellants will address other issues raised by the government herein.

### A.     Smith, McThunel and Ayodele have a Fourth Amendment interest in their location history, as Google recently demonstrated.

On December 12, 2023, Google announced that it will no longer store private Location History data on its servers, and individuals who wish to enable such data will store such information on their own devices. *See* Marlow McGriff, Updates to Location History (Dec. 12, 2023), available at: https://blog.google/products/maps/updates-to-location-history-and-new-controls-coming-soon-to-maps/. The notice provides that if users wish to store a back-up copy of their data on "the cloud" – i.e. Google's servers – Google will "automatically encrypt your backed-up data so no one can read it, including Google." Google's announcement concludes that "[y]our location information is

1

personal," and that eliminating Google's custody of this information was in the interest of "keeping [this information] safe, private, and in your control." *Id.*

Because Google will no longer have access to users' Location History data at the account level, it will not be able to access private Location History data in response to geofence warrants. In other words, this announcement means the end of non-particularized geofence warrants that request searches of users' private Location History data held by Google based solely on proximity to a specific location. *See* Cyrus Farivar & Thomas Brewster, Google Just Killed Warrants That Give Police Access to Location Data, Forbes (Dec. 14, 2023), available at: https://www.forbes.com/sites/cyrusfarivar/2023/12/14/google-just-killed-geofence-warrants-police-location-data/?sh=6c366e9f2c86.

Any doubt about whether Location History data is personal, private, and protected by the Fourth Amendment should be eliminated by Google's announcement. Whether Location History data is held on a personal phone, or on Google's servers, it is a "virtual journal" of where a person has traveled that is created edited, and stored by and for individual Google users. (ROA.134). Such information is not subject to access by the government without probable cause connecting a particular crime to the particular account searched, regardless of whether it is stored on a device or in the cloud. *See Riley v. California*, 573 U.S. 373, 397 (2014) (stating "[c]ell phone users often may not know whether particular

2

information is stored on the device or in the cloud, and it generally makes little difference."). Both types of data consist of password-protected personal information, and thus are protected against government searches by the Fourth Amendment. *See Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001) (holding that password-protected computer files on common computer were protected by Fourth Amendment). Google's announcement, however, confirms that Location History is in fact private data that belongs to individual users like Smith, McThunel and Ayodele.

Indeed, as both Google and the appellants have maintained, Location History is not a Google "business record." *See United States v. Chatrie*, 590 F. Supp. 3d 901, 907 n. 5 (E.D. Va. 2022). Rather, it is the appellants' personal property – part of their digital papers and effects – that Google stores (or used to store) on behalf of its users. And as a result, Google owes a duty to the appellants to keep their location data safe and not disclose it to others, including advertisers. *See, e.g.*, 18 U.S.C. § 2702(a)(1) and (2) (prohibiting service providers from voluntarily divulging the contents of communications); *see also Affidavit of Marlo McGriff,* (ROA.136) (regardless of the type of advertising, "Google does not share [Location History] or any other information identifying individual users with advertisers"); *Carpenter v. United States*, 138 S. Ct. 2206, 2212 (2018) (wireless

carriers "often sell aggregated location records to data brokers, without individual identifying information").

In short, the recent action by Google confirms that, by compelling Google to turn over the appellants' Location History, the government infringed on their property interest in that data. Such a trespass constitutes a Fourth Amendment search and seizure, just as surely as if the government had searched and seized papers in the appellants' hotel room or safety deposit box. Google's analogy to personal journals simply underscores the property rights affected by a geofence request and highlights the impermissibility of a general warrant authorizing the search of all such data.[1]

## B.     The government makes a remarkable concession: The warrant did not need to have the three-step process, nor did the government have to obtain further legal process.

The district court found that the warrant required that the government undertake further legal process before undertaking Steps 2 and 3 of the warrant procedures, and the government did not do so. (ROA.286-88, *United States v. Smith*, 2023 WL 1930747 at *10 (N.D. Miss. Feb. 10, 2023)). Perhaps recognizing this and other problems with the clear language of the warrant, the government

---

[1] This announcement also refutes the government's peculiar refusal to acknowledge that Google searched 592 million accounts when responding to the subpoena. See Brief of Appellee, p. 34 (stating "the implication that Google searched 592 million phones to comply with the warrant is inaccurate."). Evidence presented to this effect from Google itself is uncontradicted.

states in its brief: "There is no merit to the argument that failure to seek additional warrants at each step of the process violated appellants' Fourth Amendment rights. It was Google that established the extra steps the government must take in seeking geofence information, *steps that arguably are not required by law*." (Brief of Appellee, p. 36) (emphasis added). This astounding assertion has an impact on multiple issues in this appeal.

First, the government is incorrect when it states that it was Google that established the three-step process. In *United States v. Chatrie*, the court explained that the three-step process was the product of collaboration between Google and various law enforcement agencies, including the United States Department of Justice. *Chatrie*, 590 F. Supp. 3d at 914. In other words, the three-step process was not a concession to Google – the government apparently  believed (at that time) that the language was necessary to have a valid warrant because the government surely knew (based upon its consultation with Google) that compliance with the warrant required a search of hundreds of millions of user accounts. Now, the government takes a contrary approach in an effort to overcome the constitutional deficiencies of the warrant. The Court should not overlook this.

Second, the inclusion of this language in the warrant when it was not necessary makes the warrant even more non-particular. After all, the stated purpose of the three-step process was to (unsuccessfully) satisfy the particularity

requirement in the first place. *See Chatrie*, 590 F. Supp. 3d at 933-34 (discussing that the narrowing process could reasonably be construed as an effort to cure the warrant's shortcomings as to particularized probable cause). Since the government concedes that this narrowing process was not even necessary, then the Court can easily conclude that the warrant fails the particularity requirement outright.

Finally, the government's new position that the three-step process and requirement of further legal process were not even necessary to getting the warrant issued is yet another misrepresentation of material fact in the warrant application that contravenes *Franks v. Delaware*, 438 U.S. 154 (1978). Indeed, the Court can and should now conclude that the government placed this language in the warrant application to cause the magistrate to believe that there were safeguards in place to limit the scope of the warrant and make it more particular when the government knew that the scope of the search was in fact massive. The magistrate certainly would have had a question as to the true scope of the warrant in that case.

### C.    The government's reliance on *ex parte* magistrate judge opinions is misplaced.

Over two years ago, several magistrate judges rendered *ex parte* opinions wherein they opined as to the constitutionality of geofence warrants. To save space, the appellants will just provide their citation and the manner in which the government referred to these cases in prior briefing: 2020 WL 5491763 (E.D. Ill. 2020) (Google I), 481 F. Supp. 3d 730 (E.D. Ill. 2020) (Google II), 497 F. Supp. 3d

345 (E.D. Ill. 2020) (Google III), and 542 F. Supp. 3d 1153 (D. Kan. 2021) (Google IV), 579 F. Supp. 3d 62 (D. D.C. 2021) (Google V). The mere fact that these magistrate judges felt compelled write lengthy opinions on this issue demonstrates the concern magistrates (who were charged with issuing the warrants) had about geofence warrants. Two of the cases granted the geofence warrants, three of them denied the warrants.

The government relies heavily on *In the Matter of the Search of Information that is Stored at the Premises Controlled by Google LLC*, 579 F. Supp. 3d 62 (D.D.C. 2021) (Google V) – emphasizing one of the two that favor the government and ignoring the other three. While these opinions are of limited precedential value in the first place,[3] the Court should consider that these opinions were rendered before the full development of a factual record in *Chatrie* and this case concerning the true scope of the geofence warrants, and should not be persuasive here.

### D.    *United States v. James* does not help the government

The government's reliance on *United States v. James*, 2019 WL 325231 (D. Minn. Jan. 25, 2019), *aff'd* 3 F.4th 1102 (8th Cir. 2021), involving a cell phone tower dump, is unpersuasive. The Fifth Circuit has never found tower dumps

---

[3] *See Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 367 n.4 (5th Cir. 2023) ("[a] decision of a federal district court ... is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").

constitutional,[4] and *Carpenter* explicitly declined to bless them. *Carpenter,* 138 S. Ct. at 2220. The court in *Chatrie* specifically found that *James* was inapplicable because it did not account for whether probable cause existed to search through the other individuals' location information. *Chatrie*, 590 F. Supp. 3d at 932. Moreover, the number of people a typical tower dump searches is far smaller than the "numerous tens of millions" a geofence warrant searches. What these searches have in common is the absence of particularized probable cause, which *James* failed to consider.

**E.     The government's contention that *Ybarra* applies only to searches of persons and not things is incorrect.**

The government contends that *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) is inapplicable to this case because probable cause need only be particularized for searches of people, not things. (Brief of Appellee, p. 23, n. 9). But *Ybarra* suggests no such thing and provides no rationale for treating "persons" differently from their "houses," "papers," and "effects." U.S. Const. art. IV.  Rather, *Ybarra* applied the basic principles of probable cause, concluding that a person's mere proximity to a crime, without more, is insufficient to justify their search or seizure. *Ybarra*, 444 U.S. at 91. The geofence warrant offers no evidence that anybody possessed relevant Location History data and it was completely devoid of any suggestion that

---

[4] *United States v. Montemayor*, 55 F.4th 1003, 1009 (5th Cir. 2022) did not reach the issue.

all—or even a substantial number of—the individuals searched had participated in or witnessed the crime.

## II.    Issue II: Moody's testimony was inadmissible pursuant to *Daubert*.

In the original submission, the defendants demonstrated that the government presented no evidence that would support its burden to show Christopher Moody met the most basic *Daubert* requirements for reliability.

### A.    There is no requirement that *Daubert* motions be filed before trial.

The government suggests in its response, and the district court stated at trial, that the defendants' *Daubert* motion should have been filed before trial. However, there is no rule of criminal procedure and no local rule that requires pre-trial filing of *Daubert* motions, and the Scheduling Order in this case (ROA.34-36) did not establish such a deadline.

Indeed, the government itself had every right and opportunity to ask for a *Daubert* hearing to pre-qualify Moody to testify at trial – but chose not to do so. And courts in this circuit have recognized the perfectly valid strategy of a criminal defendant of not requesting a *Daubert* hearing that could potentially reveal trial strategy. *See United States v. St. Pierre*, 2011 WL 2199375, at *2 (E.D. La. June 6, 2011). Thus the defendants in this case cannot and should not be penalized by their decision to make their *Daubert* motion at trial.

9

**B.    Google Location History *is not* "nothing more than historical GPS location data."**

The government states that the Court should overlook Moody's deficiencies by finding that when he was testifying about google location data, he was basically just testifying about historical GPS location data that was previously used in criminal cases. This statement is incorrect – it is much more. Google Location History is not just GPS location data, but also input from cell towers, signals from nearby wireless internet networks ("Wi-Fi") and Bluetooth beacons. *United States v. Rhine*, 652 F. Supp. 3d 38, 66-67 (D.D.C. 2023); *see also* testimony of Moody (ROA.1281). Therefore, the government cannot fall back on other dissimilar technology for which other experts may have been qualified in other cases to find that Moody is qualified to testify about the reliability of Google location data.

**C.    The government cannot overcome Moody's shortcomings by asking the court to punt scientific reliability determinations to the jury.**

The government urges that the "limits of the research [Moody] undertook generally go to weight rather than the admissibility of his testimony." (Brief of Appellee, p. 51). As discussed above, the defendants objected to the utter lack of any showing of the basic *Daubert* prerequisites for admissibility rather than the "limits of his research." But in effect, the government is asking the Court to sanction the district court "punting" to the jury rather than conducting the gate-keeping role required by *Daubert*.

As the Court is aware, Federal Rule of Evidence 702 was amended on December 1, 2023. The change clarifies that expert testimony may not be admitted "unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Committee on Rules of Practice and Procedure, Report of the Judicial Conference Committee on Rules of Practice and Procedure, E-11 (Sept. 2022) (hereinafter "the Report") (accessible at https://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments). As one court has explained, "The intent of the proposed rule change is to focus and direct district courts to conduct the gate-keeping inquiry enunciated in *Daubert* and refrain from bypassing the admissibility determination in favor of a question of weight to be decided by a fact finder." *Nairne v. Ardoin*, 2023 WL 7323204, at *1 (M.D. La. Nov. 7, 2023). The Report further stated that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility. These rulings are an incorrect application of Rules 702 and 104(a)." The Report at E-10–E-11.

This Court has similarly recognized:

> Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases "the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987); *accord Fair v.*

11

> *Allen*, 669 F.3d 601, 607 (5th Cir. 2012). In the words of the Third Circuit, the "suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 294 (3d Cir. 2012). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 292; *accord Diabetes Ctrs. of Am., Inc. v. Healthpia Am., Inc.*, No. H-06-3457, 2008 WL 375505, at *2 (S.D. Tex. Feb. 11, 2008) (Atlas, J.) ("The Federal Rules of Evidence and the requirements of Daubert are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.").

*Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348–49 (5th Cir. 2020).

This is the exact problem with Moody's testimony: He could state no basis for the reliability of the information provided by Google. He was unaware of studies by anybody other that Google or the government that this theory was reliable. He was not aware of any peer review studies of this theory. He did not know the error rate – or even if there was an error rate. (ROA.1272). He was not aware that the theory has widespread acceptance in the greater scientific community – in fact, he did not believe that the scientific community would have reason to investigate the theory. (ROA.1272-73).

**D.    The government cannot rely on Spencer McInvaille to resurrect Moody's testimony.**

Perhaps in recognition of the deficiencies in Moody's qualifications and testimony, the government relies on a person that has been accepted as an expert in Google location data: Spencer McInvaille. However, McInvaille did not testify at trial; he testified at the suppression hearing in this case as to Google's methodology in responding to the subpoena. (ROA.818-32). The government does not explain how evidence *not* presented at trial satisfies its burden of proof *at trial* as to the *Daubert* requirements, nor does it cite a case that says a witness not testifying at trial can project qualification to an otherwise unqualified witness that did testify. The Court should reject this as a basis to qualify Moody.

## CONCLUSION

For the reasons stated above, this Court should reverse the judgment of the district court denying the motion to suppress, and order that the district court dismiss the indictment. Additionally, the Court should reverse the decision of the district court permitting Moody to testify, and render judgment in favor of the

defendants/appellants.

Respectfully submitted,

JAMARR SMITH

/s/ Goodloe T. Lewis
GOODLOE T. LEWIS, MSB #9889
CJA appointed Federal Public Defender
1305 Madison Avenue
Post Office Drawer 668
Oxford, Mississippi 38655
(662) 234-4000 (telephone)
glewis@hickmanlaw.com


GILBERT MCTHUNEL

/s/ Paul Chiniche
PAUL CHINICHE, MSB #101582
CJA appointed Federal Public Defender
265 N Lamar Blvd., Suite W
Oxford, Mississippi 38655
(662) 234-4319 (telephone)
pc@chinichelawfirm.com


THOMAS AYODELE

/s/ William F. Travis
WILLIAM F. TRAVIS, MSB #8267
CJA appointed Federal Public Defender
8619 Highway 51 N.
Southaven, Mississippi 38671
(662) 393-9295 (telephone)
bill@southavenlaw.com

## CERTIFICATE OF SERVICE

I, Goodloe T. Lewis, hereby certify that on January 11, 2024, the Appellants' Reply Brief was served via ECF to lead trial counsel for Plaintiff/Appellee, Assistant U.S. Attorney Robert Mims at robert.mims@usdoj.gov. I also certify that: 1) all privacy redactions have been made pursuant to 5th Cir. Rule 25.2.13; 2) the electronic submission is an exact copy of the paper documents pursuant to 5th Cir. Rule 25.2.1; and 3) the document has been scanned for viruses with the most recent version of Norton Anti-virus and is free of viruses. Further, I certify that I sent a paper copy via regular mail to Defendants/Appellants    Jamarr Smith, Gilbert McThunel and Thomas Iroko Ayodele and District Judge Sharion Aycock.

/s/ *Goodloe T. Lewis*
GOODLOE T. LEWIS

CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1.    Exclusive of the exempted portion in 5th Cir. R. 32.2.7(b)(3), this brief contains 3,086 words.

2.    This reply brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman typeface and 14 point font size.

3.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

/s/ *Goodloe T. Lewis*
GOODLOE T. LEWIS