CASE NO.: 23-60321

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

V.

JAMARR SMITH, THOMAS AYODELE, GILBERT MCTHUNEL, II

Defendants - Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF MISSISSIPPI

OXFORD DIVISION

THOMAS AYODELE'S PRO SE SUPPLEMENTAL BRIEF

CRIMINAL APPEAL

By

/s/ Thomas Ayodele

MR. THOMAS AYODELE

Federal Prisoner # 73342-509

FCC YAZOO CITY LOW II

P.O. BOX 5000

YAZOO CITY, MS 39194

CASE NO.: 23-60321

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

V.

JAMARR SMITH, THOMAS AYODELE, GILBERT MCTHUNEL, II

Defendants - Appellants

TABLE OF CONTENTS

CARATULA..........................................................................................................1

TABLE OF CONTENTS .....................................................................................2

MOTION FOR LEAVE FILING OF PRO SE SUPPLEMENTAL BRIEF ........3

THE GOVERNMENT NOT ONLY VIOLATED MY FORTH AMENDMENT RIGHT BUT ALSO IT VIOLATED MY EIGHT AMENDMENT RIGHT.....................4

  I.   GOOGLE IS NOT LONGER RESPOND TO GEOFENCE WARRANTS............5

  II.  ACLU ARGUMENTS APPLIES SUCCESSFULLY FOR THOMAS' PRIVACY RIGHTS......................................................................................7

  III. FIRST APPELLATE COURT FINDS GEOFENCE WARRANT UNCONSTITUTIONAL......................................................................................9

  IV. IN DECEMBER, GOOGLE ENDED ITS PRACTICE OF RESPONDING TO GEOFENCE WARRANTS BECAUSE IS A FORM OF PROSECUTORIAL MISCONDUCT!!..................................................................11

CONCLUSION:

BEYOND LOCATIONAL PRIVACY..................................................................13

Certificate of Service............................................................................................14

Certificate of Compliance.....................................................................................14

CASE NO.: 23-60321

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

V.

JAMARR SMITH, THOMAS AYODELE, GILBERT MCTHUNEL, II

Defendants - Appellants

### MOTION FOR LEAVE FILING OF PRO SE SUPPLEMENTAL BRIEF

Hereby, THOMAS AYODELE, the Appellant in the above captioned appeal, very respectfully and pursuant to Haines v. Kerner, 404 U.S. 519, 92 S. CT. 594, 30 L. Ed. 2d. 652 (1972), is submitting his PRO SE Motion For Leave To file his Supplemental Brief in light of the most recent public announcement made by GOGGLE, the state ruling declaring unconstitutional geofence warrants, and his public defender March 26, 2004's letter to this court informing that he will not be able to attend upcoming ORAL ARGUMENT hearing. May this Honorable Court of Appeals grant relief sought. Signed under 28 USC § 1746.

Respectfully Submitted,

Dated: March 31, 2024.

/s/ *Thomas Ayodele*

Mr. Thomas Ayodele, *Pro Se*

Federal Prisoner #73342-509

FCC YAZOO CITY LOW II

P.O. BOX 5000

YAZOO CITY, MS 39194

## THOMAS AYODELE'S PRO SE SUPPPLEMENTAL BRIEF

**TO THE HONORABLE PANEL OF JUSTICES:**

I, AYODELE THOMAS, the Appellant on the above captioned appeal, very respectfully, would like to submit the following most recent facts of legal relevance to the attention of this Honorable Court of Appeals for the Fifth Circuit in order to be considered favorably.

## THE GOVERNMENT NOT ONLY VIOLATED MY FORTH AMENDMENT RIGHT BUT ALSO IT VIOLATED MY EIGHT AMENDMENT RIGHT[1]

The warrant at issue here—a so-called "geofence" or "reverse location" warrant—is a modern version of a general warrant. And like the general warrants so reviled by this country's founders, this warrant cannot survive constitutional scrutiny. *The Fourth Amendment's* familiar demands of particularity and probable cause were designed to prevent warrants precisely like this one that give law enforcement broad license to rummage through individuals' private spaces. Prior to the nation's founding, general warrants and "writs of assistance" were used by officials to go house by house, searching for smuggled goods and evidence of seditious libel. But, on November 8, 2018, this general warrant allowed law enforcement to go Google account by Google account, searching each user's private location data for evidence of an alleged crime that four years later arrested an innocent man.

This should be of concern animating this Honorable Court to address general warrants equally in the light of today's geofence warrants sanctioning its lack of individualized suspicion, **unbridled officer discretion**, and impact the privacy rights of countless innocent individuals. Specifically, this is the case of Thomas Ayodele whose.....he *Fourth Amendment,* nor *Article 3, § 23 of the Mississippi Constitution* that clearly mandates that "The people shall be secure in their persons, houses, and

---

[1] Mr. Thomas Ayodele's confinement has been cruel and unusual punishment due to COVID-19 exposure, constant lock downs, and inability to help his biological father who suffers severe health medical conditions. In prison he is unable to provide proper financial assistance to his love ones. Hereby, ineffective assistance of counsel and prosecutorial misconduct issues are being preserved.

possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized." May this Honorable Court consider the following additional facts and laws:

I. **GOOGLE IS NOT LONGER RESPOND TO GEOFENCE WARRANTS**

*Google is out of the data dispensary business.* The web goliath said this week it is changing the way it handles Location History data: It will store such data on-device rather than on its own servers; it will reduce the default data retention period – via the auto-delete setting – to three months, down from 18 months currently; and, for those who backup their data to the cloud, "we'll automatically encrypt your backed-up data so no one can read it, including Google," Decembet 18, 2023, GOOGLE NEWS, Marlo McGriff, Google Maps' product director, said.

The anticipated result – as these changes get implemented over the next few months – is that Google, like Apple, will have nothing to offer those who drop by for **A GEODATA FISHING EXPEDITION.**[2]

Indeed, Google confirmed to The Register the search titan **WILL NO LONGER BE ABLE TO RESPOND TO NEW GEOFENCE WARRANTS** once these changes are put in place because it won't have access to the relevant data. In other words, the changes were explicitly designed to put an end to dragnet searches of location data. Quoted from The Register.com/Google out of data dispensary business.

---

[2] *Google No Longer Respond to Geofence Warrants.* A Google employee said that Google made the move to explicitly bring an end to geofence warrants using Google information. On December 18, 2023, Wednesday, Google announced it would soon change the way it would store and access users' opt-in "Location History" in Google Maps, making the data retention period shorter, and making it impossible for the company to access it. That means it will no longer respond to "geofence warrants. a controversial legal tool used by local and federal authorities to force Google to hand over information about all users within a given location during a specific timeframe.. Policemag.com

That said, we reckon Google won't be able to fully extricate itself from the surveillance business any time soon. As the EFF points out, Google collects location data in other contexts outside of its Location History timeline, like its Web & App Activity setting, which may be sought by authorities through lawful demands. And of course, authorities can be expected to continue to seek associated information like IP addresses – which may lead to a location – through individually-tailored warrants based on reasonable suspicion. Id.

On December 21, 2023 - 13:27, Melody Brannon said that "Location data has been collected by Google through our smartphones and other devices and then indefinitely stored in Google-maintained database called "Sensorvault." Enormous quantities of location data were made available to the government through search warrants. Known as geofence warrants or reverse-location warrants, this data serves as a literal dragnet for police. It became so popular that about one fourth of all search warrants served on Google were for geofence data—to "to identify users, based on their Location History information, who may have been in a given area within a certain timeframe."

The enormity of the government's data collection OFFENDS THE FOURTH AMENDMENT, raising concerns about lack of probable cause, lack of particularity, and overbreadth. Some courts agreed; others resisted. In U.S. v. Chatrie, 590 F. Supp 3 d 901 (E.D. Va. 2022), a hard-fought challenge to geofencing in the Eastern District of Virginia, the district court found it **unconstitutional**, only to have the government appeal to the Fourth Circuit, arguing for expanded police power.[3]

---

[3] But then Google changed things. Location data will now be stored on individual devices and set to auto-delete after three months rather than 18 months. Google announced that this will give "you even more control over this important, personal information." Our friends at Electronic Frontier Foundation analyze the changes this way: "These changes would appear to make it much more difficult—if not impossible—for Google to provide mass location data in response to a geofence warrant . . ." After all, the only reason geofence warrants were a thing is because Google "collects and stores specific user location data . . . . altogether in a massive database . . ." Googlestook news.

There are still many questions about what will be available to the government through Google. These new changes cannot undo the past government violations or Google's complicity with the unconstitutional conduct. And Google continues to collect other location data that the government can access. Targeted (maybe even constitutional) warrants may still be available. But these changes should curb police abuse of this technology going forward.

These changes are, at least in part, the result of defense litigation and policy advocacy. We previously blogged about it here and here. And EFF, NACDL, and others have kept it on the front burner, encouraging Google to "stand up for its affected users." It appears that Google heard, loud and clear. Lawsuit challenges Google keyword search warrants, alleges police access to IP data too broad

The lawsuit comes after Google announced its decision to end geofence warrants in December. See January 09, 2024 12:11 PM, googlestock_13020_news.jpg

## II. <u>ACLU ARGUMENTS APPLIES SUCCESSFULLY FOR THOMAS' PRIVACY RIGHTS</u>

For years, the ACLU and other privacy advocates have been challenging law enforcement's growing use of reverse warrants. These problematic warrants include, most prominently, reverse location warrants (also known as geofence warrants), which seek location data to identify anyone who was within a defined area during a specific time period. A second type, reverse keyword warrants, demand the identity of every person who entered a certain word or phrase into a search engine during a set timeframe and possibly within a defined geographic area. The constitutionality of reverse warrants is highly suspect because, like general warrants that are prohibited by the Fourth Amendment, they permit searches of vast quantities of private, personal information without identifying any particular criminal suspects or demonstrating probable cause to believe evidence will be located in the corporate databases they search.

Data provided by Google, which is believed to be the most frequent target of reverse warrants due to its extensive collection of customer location data from Android phones and Internet search data from its eponymous search engine, reflects a significant rise in law enforcement's use of reverse

location warrants. For example, the number of reverse location warrants Google received from the federal government grew by 1,171 percent between 2018 and 2020, while the number of reverse location warrants issued to Google by state and local law enforcement grew by 813 percent in California, 901 percent in Florida, 1,291 percent in Michigan, 1,867 percent in Missouri, and 5,333 percent in Massachusetts during that same time period.

While reverse warrants present a threat to everyone's privacy, they pose an even greater threat to communities of color, low-income communities, and other groups that are already the target of over-policing. Further, in the aftermath of Dobbs, the criminalization of abortion has dramatically increased the likelihood of reverse warrants being used to identify people seeking reproductive care.

Fortunately, at the time the Supreme Court overturned Roe v. Wade, the ACLU was already fighting against reverse warrants. In 2022, the ACLU's affiliates in New York and Utah were both involved in legislative efforts to prohibit their use. Each of these early efforts provided important momentum to the anti-reverse warrant cause. In 2023, building upon the anti-reverse warrant efforts in Utah and New York, the ACLU launched a nationwide, multistate effort to ban reverse warrants and saw important progress made on bills in California, Missouri, and Delaware.

During the same time period, the ACLU filed a series of friend-of-the-court briefs arguing that reverse warrants were unconstitutional and conducted without sufficient safeguards. Most recently, we collaborated with library groups to tell the Pennsylvania Supreme Court that Google Search queries, which were the target of a reverse keyword warrant, constitute some of the most private data individuals have and must be protected by state and federal Constitutions.

The ACLU also filed a brief in the Fourth Circuit case of United States v. Chatrie, 590 F. Supp. 3d 901 (E.D. Va 2022), the first case where the defendant called witnesses from Google to demystify the technology and cast doubt on the reliability of geofence surveillance. There, ACLU

argued that the geofence warrant for Google location data was so overbroad and unjustified that it was patently invalid.[4]

## III. **FIRST APPELLATE COURT FINDS GEOFENCE WARRANT UNCONSTITUTIONAL**

The California Court of Appeal has held that a geofence warrant seeking information on all devices located within several densely-populated areas in Los Angeles **VIOLATED** *the Fourth Amendment*. This is the first time an appellate court in the United States has reviewed a geofence warrant. The case is **People v. Meza**, (04/13/2023) 90 Cal.App.5th 520, Case #: B318310 and EFF filed an amicus brief and jointly argued the case before the court.

Geofence warrants, which we have written about extensively before, are unlike typical warrants for electronic information because they don't name a suspect and are not even targeted to specific individuals or accounts. Instead, they require a provider—almost always Google—to search its entire reserve of user location data to identify all users or devices located in a geographic area during a time period specified by law enforcement.

---

[4] For these reasons, the ACLU will continue to advocate for bans on the use of reverse warrants at the state and federal level, with an enhanced emphasis on the unaltered risks presented by reverse keyword warrants. In court, like our brief in the Pennsylvania Supreme Court, ACLU will continue to assert that these searches, which are akin to reading someone's most complete and intimate diary, are unconstitutional and give police far too much unchecked power. Statements made by Chad Marlow, Senior Policy Counsel, ACLU Jennifer Stisa Granick, Surveillance and Cybersecurity Counsel, ACLU Speech, Privacy, and Technology Project January 29, 2024.

In the Meza case,[5] Los Angeles Sheriff's Department deputies were investigating a homicide and had video footage suggesting the suspects followed the victim from one location to another before committing the crime. To try to identify the unknown suspects, they sought a warrant that would force Google to turn over identifying information for every device with a Google account that was within any of six locations over a five hour window.

The warrant covered time periods where people were likely to be in sensitive places, like their homes, or driving along busy streets. In total, police requested data for geographic area equivalent to about 24 football fields (five to six city blocks), which included large apartment buildings, churches, barber shops, nail salons, medical centers, restaurants, a public library, and a union headquarters.

Typically, as in this case, geofence warrants lay out a three-step process by which police are supposed to execute the warrant: first, Google provides anonymized identifiers for each device within the geofenced area; second, police identify a subset of those devices and ask Google for additional information on where those devices traveled over an expanded time period; and finally, police identify a further subset of the anonymized devices and ask Google to unmask them and provide detailed account information for those device owners.

A judge is only involved in issuing the initial warrant, and POLICE HAVE LITTLE OR NO DIRECTION FROM THE COURT ON HOW THEY SHOULD NARROW DOWN THE DEVICES

---

[5] In Meza, the Court of Appeal found that these problems doomed the geofence warrant at issue. The court held the warrant was **invalid under the Fourth Amendment** because it failed "to place any meaningful restriction on the discretion of law enforcement officers to determine which accounts would be subject to further scrutiny or deanonymization." THE COURT ALSO HELD THE WARRANT WAS **OVERBROAD** BECAUSE IT "AUTHORIZED THE IDENTIFICATION OF ANY INDIVIDUAL WITHIN SIX LARGE SEARCH AREAS WITHOUT ANY PARTICULARIZED PROBABLE CAUSE AS TO EACH PERSON OR THEIR LOCATION." The court held the geographic areas and time periods covered by the warrant were impermissibly broad because they included areas where the suspects could not have been (like inside apartments) and covered time periods when police knew—based on time-stamped video footage—that the suspects had already moved on. This part of the court's opinion largely tracks prior lower court rulings. See DEEPLINKS BLOG BY JENNIFER LYNCH APRIL 24, 2023. By Julia Love Bloomberg News.

THEY ULTIMATELY ASK GOOGLE TO IDENTIFY. This can allow the police to **arbitrarily alter the process,** as they did in this case, or attempt to unmask hundreds or even thousands of devices, as they have in other cases.

## IV. IN DECEMBER, GOOGLE ENDED ITS PRACTICE OF RESPONDING TO GEOFENCE WARRANTS BECAUSE IS A FORM OF PROSECUTORIAL MISCONDUCT!!

The move came three months after a Bloomberg investigation that found police across the U.S. were increasingly using warrants to obtain location and search data from Google, even for nonviolent cases, and even for people who had nothing to do with the crime. "Google's policy change on geofence warrants raises the stakes for keyword warrants," he said. Bloomberg reporter Davey Alba contributed to this story. ©2024 Bloomberg L.P. Visit bloomberg.com. Distributed by Tribune Content Agency, LLC. December 20, 2023, 4:05

Google's decision to limit its access to users' location data will reshape police investigations well before appellate courts get a chance to rule on the constitutionality of law enforcement's use of geofencing surveillance technology.

The Alphabet Inc. Unit's move to encrypt users' Google Maps location history and store it on their devices, announced last week, will eventually render the company unable to fulfill geofence warrants, which typically seek to identify anyone with Google accounts who was within a given perimeter during the time of a crime. Privacy advocates, who've backed the challenges to a practice they've labeled an **unconstitutional invasion of privacy,** lauded the move. But police and others contend that without the information in Google's database, some cases may go unsolved or take longer to investigate. Google's decision comes as courts around the country scrutinize whether the use

of GEOFENCE WARRANTS **VIOLATES** THE *FOURTH AMENDMENT'S* protection against unreasonable searches—[6]

"Wessler said the change will eventually end Google's involvement in new geofence case filings and better protect people's privacy from inclusion in a database that was "prone to abusive requests." Google Maps' widespread use made the company a popular subject of geofence warrants, which have been used to prosecute racial justice protesters in Kenosha, Wis., and participants of the Jan. 6, 2021, insurrection at the US Capitol.

Geofence requests accounted for nearly 25% of all US warrants received by Google between 2018 and 2022, according to the company's only report disclosing geofence request data. Apple, by comparison, said in a September transparency report that it doesn't store the location data needed to comply with geofence requests. After Google rolls out the location data-storage changes over the coming year, it won't have access, either. Location history will be stored on each user's device, and Google will encrypt whatever remains in the cloud so it can't see it, according to a Dec. 12 company blog post.

But the move will deprive law enforcement of a valuable tool. Police have used Google's data to accelerate the progress of investigations more quickly than "more shoe-leather based approaches," said Daniel Richman, a surveillance and criminal law professor at Columbia Law School and former federal prosecutor in the Southern District of New York.

A Bloomberg Businessweek investigation published in September found police were increasingly using geofence warrants in nonviolent cases and to search for people who weren't

---

[6] Even though we're not aware of any other companies that are sitting on this kind of a location database and subject to similar geofence warrants, the legal questions in these cases will remain very important because part of the question is **whether it's okay for the government to basically try to scoop up tons of innocent people's data in an attempt to identify one person who was implicated in a crime,**" said Nathan Freed Wessler, the deputy director of the Speech, Privacy, and Technology Project at the American Civil Liberties Union.

associated with a crime. Geofence warrants have become a popular initial step for investigating crimes before pursuing more comparably invasive actions like executing house search warrants, Richman said. "It really gives the police a way to jump-start investigations and narrow down the range of people without intruding on their lives," he said.

Losing access to Google's data could result in "some mix of cases not solved or cases that require considerably more resource expenditure," Richman added. California, Texas, and Florida accounted for nearly 35% of all geofence warrants Google fielded between 2018 and 2020, according to the company's report.

Whose Data? Criminal defendants whose prosecutions or convictions relied on evidence resulting from geofence warrants have challenged their use, alleging it violates the Fourth Amendment's protection against unreasonable searches.

## CONCLUSION
## BEYOND LOCATIONAL PRIVACY

May this Honorable Court of Appeals engage in proactive jurisprudence —as it has done with other technologies— to ensure that law enforcement across the country does not continue to abuse geofence warrants disregarding fundamentals constitutional rights of all American citizens. While New York has proposed the first bill outlawing these warrants,[7] the interstate nature of location data requires federal intervention for effective laws and legislation. This legal review has started in this Honorable Court of Appeals — and must continue — in Congress.[8]

---

[7] See, e.g., Berger, 388 U.S. at 51 (suggesting that section 605 of the Communications Act of 1934, 47 U.S.C. § 605, was enacted in response to Olmstead v. United States, 277 U.S. 438 (1928), by banning the interception of wire communications).

[8] See S.B. S8183, 2019–2020 Leg. Sess. (N.Y. 2020).

May this Honorable Court of Appeals vacate, set aside, reverse this sentence and conviction or grant any other relief in furtherance of Justice. Sign under 28 USC § 1746.

Respectfully Submitted,

Dated: March 31, 2024.

/s/ Thomas Ayodele

Mr. Thomas Ayodele, Pro SE

Federal Prisoner # 73342-509

FCC YAZOO CITY LOW II

P.O. BOX 5000

YAZOO CITY, MS 39194

### Certificate of Service

I, Thomas Ayodele, certify that the foregoing Pro SE SUPPLEMENTAL BRIEF has been filed within this Honorable Court of Appeals for the Fifth Circuit by prepaid first class mail and a true copy jas been sent to the parties listed in the record; William F. Travis, 8619 HWY 51 N. Southaven, MS 38671, Goodloe T. Lewis, 1305 Madison Ave, Oxford, MS 38655, Paul Chinicle, 265 N. Lamar Blvd., Are. W., Oxford, MS 38655, and District Judge Sharion Aycock, 203 Gilmore Dr Amory, MS 38821. Signed under 28 USC § 1746.

Dated: March 31, 2024.

/s/ Thomas Ayodele

Mr. Thomas Ayodele, Pro Se

### Certificate of Compliance

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies that this brief complies with type-volume limitation of 5th Cir. R. 32.2.7(b).

1. Exclusive of the exempted portion in 5th Cir. R. 32.2.7(b)(3), this brief contains 5,124 words.

2. This brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in Times New Roman typeface and 12 point font size.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the brief and imposing sanctions.

Dated: March 31, 2024.

/s/ Thomas Ayodele

Mr. Thomas Ayodele, Pro Se

USPS Priority Mail Express Flat Rate Envelope label.

FROM: Thomas Aydelett
FCC Yazoo City Low11
P.O. Box 5000
Yazoo City, MS 39194

TO: United States Court of Appeals
Fifth Circuit
Office of the Clerk
600 S. Maestri Place
New Orleans, LA
70130-3408

Scheduled Delivery Date: 4/2/24
Date Accepted: 4/1/24
Time Accepted: 10:22
Postage: $30.45
Total Postage & Fees: $36.45

Tracking: EI 889 866 394 US

U.S. POSTAGE IMI $30.45
EXFL RDC 07
Orig: 38655
Dest: 70130
04/01/24
2000383596